# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

ROBERT BOLLINGER,

          Plaintiff,                       Case No. 2:25-cv-10790

v.                                      Hon. Terrence G. Berg

BOLLINGER MOTORS, INC.,        Mag. Anthony P. Patti

          Defendant.

_____/

## PLAINTIFF ROBERT BOLLINGER'S EMERGENCY MOTION FOR APPOINTMENT OF RECEIVER AND BRIEF IN SUPPORT

# **TABLE OF CONTENTS**

EMERGENCY MOTION .................................................................................... iii

BRIEF IN SUPPORT OF EMERGENCY MOTION TO APPOINT
    RECEIVER ...................................................................................................1

I.     Introduction .........................................................................................1

II.    Factual Summary .................................................................................2

      A.    A Brief History of Bollinger Motors ..........................................2

      B.    Robert Bollinger Lends Bollinger Motors $10,000,000 .............3

      C.    Bollinger Motors Defaults On Its Obligations Under The
           Note ...........................................................................................4

      D.    Bollinger Motors' Insolvency ....................................................5

      E.    Bollinger Motors' Assets Pledged As Security For The
           Note ...........................................................................................7

III.   Argument ..............................................................................................7

      A.    Controlling Legal Authority .......................................................7

      B.    A Receiver Should Be Appointed To Preserve The
           Assets Of Bollinger Motors .......................................................9

      C.    Gene Kohut Is Well-Qualified To Serve As Receiver ..............12

IV.   Conclusion ..........................................................................................13

## INDEX OF AUTHORITIES

**Cases**

*Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316-17 (8th Cir. 1993)....................................................................................................9

*Consol. Rail Corp. v. Fore River Ry. Co.*, 861 F.2d 322, 326 (1st Cir. 1988) .........8

*Fed. Nat. Mortg. Ass'n v. Mapletree Invs. Ltd. P'ship*, 2010 WL 1753112, at *2 (E.D. Mich. Apr. 30, 2010) ...............................................................................8, 9

*Haase v. Chapman*, 308 F.Supp. 399 (W.D. Mo. 1969) .........................................8

*Liberte Cap. Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006)........... 7, 8, 9

*Meyer Jewelry Co. v. Meyer Holdings, Inc.*, 906 F.Supp. 428, 432 (E.D. Mich. 1995)....................................................................................................................10

*New York Life Ins. Co. v. Watt W. Inv. Corp.*, 755 F.Supp. 287, 290 (E.D. Cal. 1991)......................................................................................................................8

*S.E.C. v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992) ..........................................8

*Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 241 (5th Cir. 1997).............8, 9

**Rules**

FED. R. CIV. P. 66 ............................................................................ iii, v, 7

**Treatises**

7 James Moore et al., MOORE'S FEDERAL PRACTICE (2d ed. 1996) ¶ 66.05[1] ........8

## **EMERGENCY MOTION**

Plaintiff, Robert Bollinger, through counsel and pursuant to Rule 66 of the Federal Rules of Civil Procedure, respectfully requests that this Court enter an Order, in a format similar to that attached here as **Exhibit A**, appointing Eugene Kohut as receiver over Defendant Bollinger Motors. Bollinger Motors is insolvent. Bollinger Motors has defaulted on its loan obligations to Robert Bollinger in the amount of $10,000,000, which are secured by the assets of the Company. Bollinger Motors has tens of millions of dollars in additional unsecured debts. Bollinger Motors' production facility has been shuttered. Without the appointment of a receiver, the collateral pledged to secure Robert Bollinger's loan to the Company could be improperly taken and/or converted. In support of this Motion, Robert Bollinger relies on the facts set forth in his Verified Complaint, incorporated by reference herein, and the arguments set forth in the attached Brief in Support.

This Motion and the Verified Complaint have been served on Bollinger Motors by providing a copy to its Chief Executive Officer, Bryan Chambers, in addition to serving it on its Registered Agent. Robert Bollinger sought concurrence in the appointment of a receiver over Bollinger Motors, but such concurrence has not been received.

## <u>STATEMENT OF ISSUES PRESENTED</u>

Whether the Court should immediately appoint a receiver to manage and engage in the orderly liquidation of Bollinger Motors, given that the Company is insolvent, unable to pay its bills as they come due, and at risk of losing collateral pledged to secure the $10,000,000 loan made by Plaintiff Robert Bollinger?

Robert Bollinger says "yes"

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

FED. R. CIV. P. 66

## BRIEF IN SUPPORT OF EMERGENCY
## MOTION TO APPOINT RECEIVER

### I.   INTRODUCTION

Plaintiff Robert Bollinger seeks the immediate appointment of a receiver over Defendant Bollinger Motors, Inc. (the "Company" or "Bollinger Motors"). Bollinger Motors has defaulted on its obligations under a $10,000,000 Amended and Restated Secured Promissory Note with Robert Bollinger (the "Note"). (ECF No. 1, Verif. Compl., Ex. A.) Robert Bollinger has accelerated the debt owing under the Note.

In addition to the debt owed to Robert Bollinger, Bollinger Motors is otherwise insolvent. Bollinger Motors has tens of millions in unsecured, overdue debt to its vendors, and Bollinger Motors does not have the ability to pay its debts as they come due. Robert Bollinger seeks the appointment of a receiver to assist in the orderly collection of the assets of the Company that were pledged as security under the Note, and to assist in the orderly sale of the Company or its assets for the benefit not only of Robert Bollinger, but also the unsecured creditors who otherwise remain unpaid. Appointment of a receiver will preserve the remaining value of Bollinger Motors for the benefit of the creditors, and such appointment is appropriate to protect Bollinger Motors from further loss. If a receiver is not appointed, Robert Bollinger is likely to be further damaged due to the unjust loss of assets that have been pledged as security for his Note.

1

WHEREFORE, Robert Bollinger respectfully requests that this Court enter an Order, in a format similar to that attached here as **Exhibit A**, appointing Gene Kohut as the receiver in this matter. Mr. Kohut's qualifications and expertise as receiver are set forth in **Exhibit B**.

## II.   FACTUAL SUMMARY

### A.   A Brief History of Bollinger Motors

Robert Bollinger started Bollinger Motors in 2015. (ECF No. 1 at ¶ 5.) Although Bollinger Motors started with a plan to build electric, consumer, off-road capable sport utility vehicles, it more recently shifted its focus to the development of class 4 and class 5 all-electric commercial trucks. (ECF No. 1 at ¶¶ 6-7.) Class 4 trucks include box trucks, step vans, and some large delivery trucks. (ECF No. 1 at ¶ 7.) Class 5 trucks are larger delivery trucks. (ECF No. 1 at ¶ 7.) Bollinger Motors originally operated in New York. Robert Bollinger moved the company to the Detroit area to enhance its engineering and production capabilities, relying on the region's expertise in automotive design and production. (ECF No. 1 at ¶ 8.) From Bollinger Motors' inception until the end of 2022, Robert Bollinger owned nearly all of the equity in Bollinger Motors. (ECF No. 1 at ¶ 9.)

In September 2022, Mullen Automotive, Inc. ("Mullen") purchased a majority interest in Bollinger Motors. (ECF No. 1 at ¶ 10.) Despite the sale of a majority of his equity interests in 2022, Robert Bollinger remained at that time as Chief

Executive Officer of Bollinger Motors and a member of its Board of Directors. (ECF No. 1 at ¶ 11.) Although Robert Bollinger had high hopes for the future of Bollinger Motors after Mullen's investment, Mullen's equity position and effective control of the Company failed to lead Bollinger Motors to self-sustaining solvency. (ECF No. 1 at ¶ 12.)

On June 22, 2024, Robert Bollinger resigned as Chief Executive Officer of Bollinger Motors due to a difference of opinion regarding the direction of the Company. (ECF No. 1 at ¶ 13.) On August 18, 2024, Robert Bollinger also fully resigned in his capacity as a member of the Board of Directors of Bollinger Motors. (ECF No. 1 at ¶ 14.) Since his resignation as a member of the Board of Directors of Bollinger Motors, Robert Bollinger has had no management role in Bollinger Motors. However, Robert Bollinger remains a "Qualified Stockholder" under Bollinger Motors' Amended and Restated Stockholders Agreement—entitling him to financial information and inspection rights. (ECF No. 1 at ¶¶ 15-16.)

### B. Robert Bollinger Lends Bollinger Motors $10,000,000

Despite no longer being directly employed by or involved in the management of Bollinger Motors, Robert Bollinger remained concerned about the future of Bollinger Motors. (ECF No. 1 at ¶ 17.) On October 24, 2024, Robert Bollinger generously loaned $10,000,000 to Bollinger Motors pursuant to an Amended and Restated Secured Promissory Note. (ECF No. 1 at ¶ 18, Ex. A.)

Bollinger Motors was required to make interest-only payments according to the payment schedule attached to the Note. (ECF No. 1 at ¶ 20, Ex. A.) The Note was secured by "all of the right, title, and interest in all of the assets of the Borrower, now owned or hereafter acquired by the Borrower, or in which the Borrower now has or at any time in the future may acquire, any right, title, or interest…." (ECF No. 1 at ¶ 21, Ex. A at ¶ 3(a).) The Security Interest excluded only a small set of inventory and intellectual property relating to consumer vehicles. (ECF No. 1 at ¶ 22, Ex. A at ¶ 3(b).) Robert Bollinger filed a UCC-1 Financing Statement with the Delaware Secretary of State on October 24, 2024 as filing number 2024 7399528, consistent with the Note. (ECF No. 1 at ¶ 24, Ex. B.)

### C.    Bollinger Motors Defaults On Its Obligations Under The Note

Bollinger Motors was required to make a payment of $125,000 on February 28, 2025, under the terms of the Note. (ECF No. 1 at ¶ 26.) Bollinger Motors failed to make the required Note payment on February 28, 2025. (ECF No. 1 at ¶ 27.) Under the Note, an "Event of Default" occurs when Bollinger Motors "fails to pay when due and payable…the full amount of any payment as required by the terms herein and, in the case of any payments other than any principal amounts under the Note, such failure continues for three (3) business days." (ECF No. 1 at ¶ 28, Ex. A at 6(a)(i).) On March 5, 2025, three business days after February 28, 2025, Robert Bollinger notified Bollinger Motors of the Event of Default, and accelerated all

amounts due under the Note. (ECF No. 1 at ¶ 29, Ex. C.)[1] Bollinger Motors remains in default under the Note.

### D.    Bollinger Motors' Insolvency

Bollinger Motors is insolvent, and there is a substantial danger that the assets pledged as security for the Note will be removed from the jurisdiction of the court, lost, concealed, materially injured or damaged, diminished, or mismanaged. (ECF No. 1 at ¶ 33.) Bollinger Motors has acknowledged its insolvency since at least January 8, 2025. (ECF No. 1 at ¶ 34.)

Mullen Automotive has advised Bollinger Motors that it is not capable of providing further funding to it. (ECF No. 1 at ¶ 44.) Mullen, listed on the NASDAQ, has been advised that it is not eligible for any more reverse stock splits—its primary method of raising funds in order to fund the operations of Mullen and Bollinger Motors. (ECF No. 1 at ¶ 45.) Without significant outside investment, Mullen cannot provide adequate resources to Bollinger Motors in order for it to be able to continue production. (ECF No. 1 at ¶ 46.)

---

[1]    On March 12, 2025, Bollinger Motors paid $125,000 to Robert Bollinger, but such payment was insufficient to cure the Event of Default that had occurred on March 5, 2025. (ECF No. 1 at ¶ 31). Robert Bollinger advised Bollinger Motors that same day that the payment did not cure the default, that the accelerated principal amount was still due and owing under the Note, and that he did not waive any other remedies available to him under the Note or the law. (ECF No. 1 at ¶ 32, Ex. D.)

Bollinger Motors cannot independently raise funds to continue production without Mullen's approval, and such approval has routinely been rejected by Mullen. (ECF No. 1 at ¶ 47.) Bollinger Motors' accounts are routinely overdrawn, and it is unable to service the tens of millions in dollars in unsecured debt it currently carries. (ECF No. 1 at ¶ 48.)[2]

Because of its growing inability to pay its debts as they come due, at least one unsecured creditor, Auto Metal Craft, Inc., has filed a lawsuit for $728,329.80 in damages. (ECF No. 1 at ¶ 49, Ex. G.) Other suppliers are demanding payment on the amounts they are owed, and Bollinger Motors likely will be facing a deluge of collections lawsuits from unsecured creditors. (ECF No. 1 at ¶¶ 50-51.) Bollinger Motors likely does not have any defenses to the potential claims of its vendors. (ECF No. 1 at ¶ 52.)

Not only is Bollinger Motors incapable of paying its current debts, but its production facility has been shut down because it the production facility is owed roughly $1.2 million, and the production team has been furloughed. (ECF No. 1 at ¶ 53.) Bollinger Motors, therefore, has no mechanism to be able to pay for the millions of dollars in accounts payable. (ECF No. 1 at ¶ 54.)

---

[2]    Bollinger Motors also has defaulted on more than $500,000 in debt on American Express cards that were somehow guaranteed by Robert Bollinger without his knowledge after he resigned from the Company. This debt also remains due and owing, and likely will fall to Robert Bollinger to pay so as to preserve his personal credit rating.

### E.    Bollinger Motors' Assets Pledged As Security For The Note

Bollinger Motors pledged, generally, all of its assets to Robert Bollinger as security under the Note. (ECF No. 1, Ex. A at ¶ 3.) Bollinger Motors has more-than $5 million in retail vehicles, (ECF No. 1 at ¶ 56), and production machinery worth at least $15 million. (ECF No. 1 at ¶ 60.) Bollinger Motors has also invested significantly in the development of the intellectual property for the class 4 and class 5 trucks it has produced and could produce. (ECF No. 1 at ¶ 63.)

These assets could be sufficient to satisfy the debt owed to Robert Bollinger, and likely could provide some value to the unsecured creditors as well. Without the appointment of a receiver, however, Bollinger Motors may squander these assets without addressing the significant debts it has already accumulated. Given its obvious insolvency, Robert Bollinger respectfully requests that this Court appoint Gene Kohut as receiver over Bollinger Motors in order to preserve the assets for the benefit of all the creditors.

## III.    <u>ARGUMENT</u>

### A.    Controlling Legal Authority

Rule 66 of the Federal Rules of Civil Procedure allows for the appointment of receivers in conformity with traditional rules of equity. *See Liberte Cap. Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006). A district court enjoys broad equitable powers to appoint a receiver over assets disputed in litigation before the court, with the receiver's role and the court's purpose in the appointment being to safeguard

disputed assets, administer the property as suitable, and achieve an equitable distribution. *See id.* The appointment of a receiver by a federal court is governed by federal, not state, law. *See Fed. Nat. Mortg. Ass'n v. Mapletree Invs. Ltd. P'ship*, 2010 WL 1753112, at *2 (E.D. Mich. Apr. 30, 2010); *New York Life Ins. Co. v. Watt W. Inv. Corp.*, 755 F.Supp. 287, 290 (E.D. Cal. 1991). The decision to appoint a receiver rests in the sound discretion of the district court, *see Consol. Rail Corp. v. Fore River Ry. Co.*, 861 F.2d 322, 326 (1st Cir. 1988), and a receiver may be appointed on a summary basis. *See S.E.C. v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992) ("hearing is not required if there is no factual dispute").

"[T]he form and quantum of evidence required on a motion requesting the appointment of a receiver is a matter of judicial discretion." *Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 241 (5th Cir. 1997). Receivers may be appointed to "preserve property pending final determination of its distribution in supplementary proceedings in aid of execution." 7 James Moore et al., MOORE'S FEDERAL PRACTICE (2d ed. 1996) ¶ 66.05[1] (citing *Haase v. Chapman*, 308 F.Supp. 399 (W.D. Mo. 1969)). "Factors that courts have considered as indicating the need for a receivership include the following: 'a valid claim by the party seeking the appointment; the probability that fraudulent conduct has occurred or will occur to frustrate that claim; imminent danger that property will be concealed, lost or diminished in value; inadequacy of legal remedies; lack of a less drastic equitable remedy; and likelihood

that appointing the receiver will do more good than harm.'" *Santibanez*, 105 F.3d at 241-42 (quoting *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316-17 (8th Cir. 1993)).

**B.    A Receiver Should Be Appointed To Preserve The Assets Of Bollinger Motors**

The person asking for the appointment of a receiver must have a specific interest in the property that will be subject to the receivership. Federal Courts consider various factors in deciding if a receiver should be appointed in a particular case. The most important factor is the financial condition of the borrower and the adequacy of the security held by the creditor. *Fed. Nat. Mortg. Ass'n v. Mapletree Invs. Ltd. P'ship*, 2010 WL 1753112, at *3 (E.D. Mich. Apr. 30, 2010). "The inability of a receivership estate to meet all of its obligations is typically the *sine qua non* of the receivership." *Liberte Cap. Grp., LLC v. Capwill*, 462 F.3d 543, 552 (6th Cir. 2006). Six factors have been laid out in this District for the appointment of a receiver:

> [F]actors typically influencing the district court's exercise of discretion include: (i) the existence of a valid claim by the moving party; (ii) the probability that fraudulent conduct has occurred or will occur to frustrate the claim; (iii) imminent danger that property will be lost, concealed, or diminished in value; (iv) inadequacy of legal remedies; (v) lack of a less drastic equitable remedy; and (vi) the likelihood that appointment of a receiver will do more harm than good.

9

*Meyer Jewelry Co. v. Meyer Holdings, Inc.*, 906 F.Supp. 428, 432 (E.D. Mich. 1995). Application of these factors in this case strongly supports appointment of a receiver for Bollinger Motors.

### 1.    Robert Bollinger Has A Valid Claim

Robert Bollinger's loan to Bollinger Motors is supported by a valid Secured Promissory Note, with a properly recorded security interest. Bollinger Motors defaulted under the terms of the Note, and Robert Bollinger properly accelerated all amounts due and owing under the Note. Bollinger Motors has no defenses to Robert Bollinger's claim.

### 2.    Bollinger Motors Assets Could Become The Subject Of Aggressive Collection Attempts and/or Fraudulent Transfers That Would Frustrate Robert Bollinger's Priority Claim

Bollinger Motors owes tens of millions of dollars to unsecured creditors. Mullen Automotive, Bollinger Motors' majority shareholder, has indicated that it is suffering from significant headwinds and cannot further fund Bollinger Motors. Bollinger Motors' intellectual property and sale-ready vehicles represent millions of dollars in investment and assets that are highly portable and easily transferrable. Further, Bollinger Motors has a fully-paid, $15 million production line stored at another company's production facility. Given Bollinger Motors' precarious financial position, these assets could be lost or the subject of fraudulent transfers designed to frustrate Robert Bollinger's priority secured position.

### 3. *Robert Bollinger's Collateral Could Be Diminished*

As the unsecured creditors swarm, Bollinger Motors may make decisions that would compromise Robert Bollinger's collateral not for the payment of the debt owed to him, but for immediate payment needs of unsecured creditors that fall behind him. Given the Company's insolvency, the collateral remains constantly threatened.

### 4. *Legal Remedies Are Inadequate*

A money judgment will not adequately compensate Robert Bollinger because Bollinger Motors does not have any money with which to pay such a judgment. The appointment of a receiver is the only way to ensure the assets are properly collected for the benefit of Robert Bollinger and the unsecured creditors.

### 5. *Other Equitable Remedies Are Inadequate*

There are no other equitable remedies that are sufficient to preserve the assets and provide for the orderly dissolution or sale of the insolvent Bollinger Motors.

### 6. *A Receiver Will Do More Good Than Harm*

Appointing a receiver will maximize the value of Bollinger Motors for the benefit of not only Robert Bollinger, but also the unpaid, unsecured creditors. Bollinger Motors does not have any money to address these tens of millions of dollars in debts, and the appointment of a receiver will prevent unnecessary, messy disputes, and will allow for the orderly sale or dissolution of Bollinger Motors.

### C.       Gene Kohut Is Well-Qualified To Serve As Receiver

Gene Kohut leads the fiduciary service practice of Trust Street Advisors. (**Ex. B**.) Mr. Kohut has over 25 years' experience in business operations, wind downs, liquidations, and sales in the automotive and manufacturing industries. (**Ex. B**.) Mr. Kohut has been the assignee, trustee, and court appointed receiver for numerous manufacturing entities. (**Ex. B**.) Mr. Kohut has retained Steve Gross, of McDonald Hopkins, to serve as counsel for the independent receiver.

Prior to his engagement with Trust Street Advisors, Mr. Kohut was a bankruptcy trustee with the Department of Justice. Mr. Kohut is well-suited to preserve and maximize the value of an insolvent Bollinger Motors for the benefit of all the creditors.

## IV.   CONCLUSION

WHEREFORE, Plaintiff Robert Bollinger respectfully requests that this Court enter an Order, in the form attached hereto as Exhibit A, appointing Gene Kohut as receiver over Bollinger Motors and its assets.

Respectfully submitted,

WINTHROP & WEINSTINE, P.A.

Dated: March 24, 2025

By: /s/ *H. William Burdett, Jr.*
    H. William Burdett, Jr. (P63185)
P.O. Box 15038
Lansing, Michigan 48901
(313) 318-9203
burdett@winthrop.com
*Attorneys for Robert Bollinger*

31072700v3

13