UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT BOLLINGER,

      Plaintiff,

-vs-

BOLLINGER MOTORS, INC.,

      Defendant.

Case No. 2:25-CV-10790
Hon. Terrence Berg
Mag. Judge Anthony P. Patti

_____/

## ANSWER TO VERIFIED COMPLAINT AND AFFIRMATIVE DEFENSES

      Defendant Bollinger Motors, Inc. ("Bollinger Motors"), through its attorneys

Howard & Howard Attorneys PLLC, answers Plaintiff Robert Bollinger's Verified

Complaint ("Plaintiff") as follows:

### Parties, Jurisdiction and Venue

      1.    Robert Bollinger is a Pennsylvania resident.

**ANSWER: Bollinger lacks sufficient knowledge or information to form a belief**

**as to the truth of the allegations in this Paragraph.**

      2.    Bollinger Motors is a Delaware corporation with its principal place of
business located Oak Park, Michigan.

**ANSWER:  Bollinger admits the allegations of this Paragraph.**

3.     This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy is in excess of $75,000.

**ANSWER: Bollinger admits that Plaintiff has alleged an amount that meets the jurisdictional requirements of this Court. Bollinger does not dispute that jurisdiction is proper in this Court.**

4.     Venue is appropriately laid with this Court pursuant to 28 U.S.C. § 1391 because Bollinger Motors' principal place of business is located within this judicial district, and all of its assets are located within this judicial district.

**ANSWER: Bollinger does not dispute that venue is proper in this Court. To the extent any further response is required, Bollinger lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph.**

### General Allegations

5.     Robert Bollinger started Bollinger Motors in 2015.

**ANSWER: Bollinger admits the allegations of this Paragraph.**

6.     Bollinger Motors started with a plan to build electric, consumer, off-road capable sport utility vehicles.

**ANSWER: Bollinger admits the allegations of this Paragraph.**

7.     More recently, Bollinger Motors has shifted its focus to the development of class 4 and class 5 all-electric commercial trucks. Class 4 trucks include box trucks, step vans, and some large delivery trucks. Class 5 trucks are larger delivery trucks.

**ANSWER: Bollinger admits that its present focus is on the production and/or sale of class 4 and class 5 all-electric commercial trucks, and that Plaintiff has accurately described the general definition of same. Bollinger lacks information**

sufficient to form a belief as to the truth of the remaining allegations of this Paragraph.

8.    Bollinger Motors originally operated in New York. Robert Bollinger moved the company to the Detroit area to enhance its engineering and production capabilities, relying on the region's expertise in automotive design and production.

**ANSWER: Bollinger admits that it originally operated in New York and lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph.**

9.    From Bollinger Motors' inception until the end of 2022, Robert Bollinger owned nearly all of the equity in Bollinger Motors.

**ANSWER: Bollinger admits that Robert Bollinger was a majority shareholder in Bollinger until 2022. To the extent any further response is required, Bollinger lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph.**

10.    In September 2022, Mullen Automotive, Inc. ("Mullen") purchased a majority interest in Bollinger Motors.

**ANSWER: Bollinger admits the allegations of this Paragraph.**

11.    Despite the sale of a majority of his equity interests in 2022, Robert Bollinger remained at that time as Chief Executive Officer of Bollinger Motors and a member of its Board of Directors.

**ANSWER: Bollinger admits the allegations of this Paragraph.**

12.    Although Robert Bollinger had high hopes for the future of Bollinger Motors after Mullen's investment, Mullen's equity position and effective control of the company failed to lead Bollinger Motors to self-sustaining solvency.

**ANSWER: Bollinger denies the allegations of this Paragraph as untrue in the manner and form alleged.**

13.     On June 22, 2024, Robert Bollinger resigned as Chief Executive Officer of Bollinger Motors due to a difference of opinion regarding the direction of the Company.

**ANSWER: Bollinger admits that Robert Bollinger resigned as CEO of Bollinger in June 2024. To the extent any further response is required, Bollinger lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph.**

14.     Robert Bollinger also fully resigned in his capacity as a member of the Board of Directors of Bollinger Motors on August 18, 2024.

**ANSWER: Bollinger admits the allegations of this Paragraph.**

15.     Since his resignation as a member of the Board of Directors of Bollinger Motors, Robert Bollinger has had no management role in Bollinger Motors. However, Robert Bollinger remains a "Qualified Stockholder" under Bollinger Motors' Amended and Restated Stockholders Agreement due to the shares of stock he continues to hold in Bollinger Motors.

**ANSWER:  Bollinger admits that Robert Bollinger is a "Qualified Stockholder" under the Amended and Restated Stockholders Agreement. To the extent any further response is required, Bollinger lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph.**

16.     As a Qualified Stockholder, Robert Bollinger is entitled to financial information and inspection rights.

**ANSWER: Bollinger admits only that as a Qualified Stockholder, Robert Bollinger is entitled to certain inspection rights and the rights to receive certain**

**documents, as governed by the company bylaws and other documents executed between the company and Mr. Bollinger, the contents of which speak for themselves. To the extent any further response is required, Bollinger lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph.**

17.    Despite no longer being directly employed by or involved in the management of Bollinger Motors, Robert Bollinger remained concerned about the future of Bollinger Motors.

**ANSWER: Bollinger lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph.**

18.    On October 24, 2024, Robert Bollinger generously loaned $10,000,000 to Bollinger Motors pursuant to an Amended and Restated Secured Promissory Note. (Ex. A, the "Note").

**ANSWER: Bollinger submits that the terms of the document attached as Exhibit A to the Complaint, referenced in this Paragraph, speak for themselves and accordingly, no further response is required. To the extent any further response is required, Bollinger lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph.**

19.    The Note carried interest at a rate of 15% per year. (Ex. A at ¶ 1.)

**ANSWER: Bollinger submits that the terms of the document attached as Exhibit A to the Complaint, referenced in this Paragraph, speak for themselves, and accordingly, no further response is required. To the extent any further response is required, Bollinger admits only that the Note, attached as Exhibit**

A to the Complaint, states the applicable interest rate agreed upon between the

parties to that document.

20.    Bollinger Motors was required to make interest-only payments according to the payment schedule attached to the Note. (Ex. A at 112(a).)

**ANSWER**:  **Bollinger submits that the terms of the document attached as Exhibit A to the Complaint, referenced in this Paragraph, speak for themselves, and accordingly, no further response is required. To the extent any further response is required, Bollinger admits only that the Note, attached as Exhibit A to the Complaint, states the timing and amounts of payments agreed upon between the parties to that document.**

21.    The Note was secured by "all of the right, title, and interest in all of the assets of the Borrower, now owned or hereafter acquired by the Borrower, or in which the Borrower now has or at any time in the future may acquire, any right, title, or interest ...." (Ex. A at ¶ 3(a).)

**ANSWER**:  **Bollinger submits that the terms of the document attached as Exhibit A to the Complaint, referenced in this Paragraph, speak for themselves, and accordingly, no further response is required. To the extent any further response is required, Bollinger admits only that the Note, attached as Exhibit A to the Complaint, states the collateral and security of Mr. Bollinger, and denies the allegations of this Paragraph as untrue in the manner and form alleged to the extent this Paragraph alleges or suggests that Bollinger's for sale inventory is part of the secured assets under the Note.**

22.     The Security Interest excluded only a small set of inventory and intellectual property relating to consumer vehicles. (Ex. A at ¶ 3(b).)

**ANSWER: Bollinger submits that the terms of the document attached as Exhibit A to the Complaint, referenced in this Paragraph, speak for themselves, and accordingly, no further response is required. To the extent any further response is required, Bollinger admits only that the Note, attached as Exhibit A to the Complaint, states the collateral and security of Mr. Bollinger, and denies the allegations of this Paragraph as untrue in the manner and form alleged to the extent this Paragraph alleges or suggests that Bollinger's for sale inventory is part of the secured assets under the Note.**

23.     Robert Bollinger was entitled to perfect the Security Interest under the Note by filing UCC-1 Financing Statements. (Ex. A at III 3(c).)

**ANSWER: Bollinger submits that the terms of the document attached as Exhibit A to the Complaint, referenced in this Paragraph, speak for themselves and accordingly, no further response is required. To the extent any further response is required, Bollinger admits only that the Note, attached as Exhibit A to the Complaint, states the parties respective rights relating to the perfection of any security interest agreed upon between the parties, and denies the allegations of this Paragraph as untrue in the manner and form alleged, to the extent this Paragraph alleges or suggests that Bollinger's for sale inventory is part of the secured assets under the Note.**

24.     Robert Bollinger filed a UCC-1 Financing Statement with the Delaware Secretary of State on October 24, 2024 as filing number 2024 7399528, consistent with the Note. (Ex. B.)

**ANSWER: Bollinger submits that the terms of the document attached as Exhibit B to the Complaint, referenced in this Paragraph, speak for themselves and accordingly, no further response is required. To the extent any further response is required, Bollinger denies the allegations of this Paragraph as untrue in the manner and form alleged to the extent this Paragraph alleges or suggests that Bollinger's for sale inventory is part of the secured assets under the Note.**

25.     Upon information and belief, Robert Bollinger is the only person or entity that has a security interest in the assets of Bollinger Motors.

**ANSWER:  Bollinger admits that Robert Bollinger is the only person with a security interest in the collateral that secures the Note at issue. Bollinger lacks information sufficient to form a belief as to the remaining allegations of this Paragraph.**

26.     Bollinger Motors was required to make a payment of $125,000 on February 28, 2025 under the terms of the Note. (Ex. A.)

**ANSWER: Bollinger submits that the terms of the document attached as Exhibit A to the Complaint, referenced in this Paragraph, speak for themselves and accordingly, no further response is required. To the extent any further response is required, Bollinger admits only that the Note, attached as Exhibit**

A to the Complaint, states the timing and amounts of payments agreed upon

between the parties to that document.

27.    Bollinger Motors failed to make the required Note payment on
February 28, 2025.

**ANSWER: Bollinger admits only that it made the Note payment referenced in
this Paragraph on or about March 12, 2025, and denies that the timing of this
payment was a default under the terms of the Note and/or applicable law.**

28.    Under the Note, an "Event of Default" occurs when Bollinger Motors
"fails to pay when due and payable ...the full amount of any payment as required by
the terms herein and, in the case of any payments other than any principal amounts
under the Note, such failure continues for three (3) business days." (Ex. A at 6(a)(i).)

**ANSWER: Bollinger submits that the terms of the document attached as
Exhibit A to the Complaint, referenced in this Paragraph, speak for themselves
and accordingly, no further response is required. To the extent any further
response is required, Bollinger admits only that the Note, attached as Exhibit
A to the Complaint, states the timing and amounts of payments agreed upon
between the parties to that document and denies the Note is in default under
the terms of the Note and/or applicable law.**

29.    On March 5, 2025, Robert Bollinger notified Bollinger Motors of the
Event of Default, and accelerated all amounts due under the Note. (Ex. C.)

**ANSWER: Bollinger submits that the terms of the document attached as
Exhibit C to the Complaint, referenced in this Paragraph, speak for themselves
and accordingly, no further response is required. To the extent any further**

9

**response is required, Bollinger denies the Note is in default under the terms of the Note and/or applicable law and lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph.**

30.   When an Event of Default has occurred under the Note, "the aggregate principal amount of this Note (together with all accrued interest thereon and all other amounts due and payable with respect thereto) shall become immediately due and payable without any action on the part of the Lender, and the Lender may exercise one or more of the following rights or remedies: (i) foreclose the Security Interest on the Collateral; (ii) pursue collection of this Note; or (iii) exercise or enforce any or all rights and remedies available upon default to a secured party under the UCC and all other similar and applicable codes and statutes, including, but not limited to, the right to sell the Collateral, or any part thereof, at a public or private sale." (Ex. A at ¶ 6(b)(i).)

**ANSWER: Bollinger submits that the terms of the document attached as Exhibit A to the Complaint, referenced in this Paragraph, speak for themselves and accordingly, no further response is required. To the extent any further response is required, Bollinger admits only that the Note, attached as Exhibit A to the Complaint, states the parties' respective rights and obligations in the event of a default, and denies the Note is in default under the terms of the Note and/or applicable law.**

31.   On March 12, 2025, Bollinger Motors paid $125,000 to Robert Bollinger.

**ANSWER: Bollinger admits that it made the payment referenced in this Paragraph on or about March 12, 2025, and denies that the timing of this payment was a default under the terms of the Note and/or applicable law.**

32.     On March 12, 2025, Robert Bollinger advised Bollinger Motors that such payment was insufficient to cure the default and the accelerated principal amount due and owing under the Note. (Ex. D.)

**ANSWER: Bollinger submits that the terms of the document attached as Exhibit D to the Complaint, referenced in this Paragraph, speak for themselves and accordingly, no further response is required. To the extent any further response is required, Bollinger denies the Note is in default under the terms of the Note and/or applicable law and lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph.**

33.     There is a substantial danger that the assets pledged as security for the Note will be removed from the jurisdiction of the court, lost, concealed, materially injured or damaged, diminished, or mismanaged.

**ANSWER: Bollinger denies the allegations of this Paragraph as untrue in the manner and form alleged.**

34.     Bollinger Motors expressly acknowledged its insolvency since at least January 8, 2025.

**ANSWER: The allegations of this Paragraph are vague and fail to identify any specific documents or statements by Bollinger. For this reason, Bollinger lacks information sufficient to form a belief as to the truth of the allegations of this Paragraph.**

35.     On January 3, 2025, Robert Bollinger declared an Event of Default because of a Material Adverse Change under the Note. (Ex. E.)

**ANSWER: Bollinger submits that the terms of the document attached as Exhibit E to the Complaint, referenced in this Paragraph, speak for themselves,**

11

and accordingly no further response is required. To the extent any further response is required, Bollinger denies that there was a Material Adverse Chage under the Note.

36.    The Material Adverse Change under the Note was the discovery of $503,128.99 in credit card debt owed to American Express on which Bollinger Motors had defaulted.

**ANSWER: Bollinger denies the allegations of this Paragraph as untrue in the manner and form alleged.**

37.    Unbeknownst to Robert Bollinger, the $503,128.99 in credit card debt was incurred on credit cards that were somehow guaranteed by Robert Bollinger, even though he was no longer employed by or a served as a director of Bollinger Motors.

**ANSWER: Bollinger lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph.**

38.    The credit card debt was not disclosed to Robert Bollinger at the time Bollinger Motors executed the Note, nor was it permitted under the terms of the Note.

**ANSWER: Bollinger denies the allegations of this Paragraph as untrue in the manner and form alleged, to the extent this Paragraph alleges or suggests any misrepresentation was made by Bollinger in connection with the negotiation or execution of the Note.  Bollinger lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph.**

39.    Bollinger Motors was not authorized to incur debt guaranteed by Robert Bollinger on the American Express credit cards.

**ANSWER: Bollinger denies the allegations of this Paragraph as untrue in the manner and form alleged, to the extent this Paragraph alleges or suggests any misrepresentation was made by Bollinger in connection with the negotiation or execution of the Note or that Bollinger took any actions in connection with the alleged credit card debt that was not in good faith and for legitimate business purposes. Bollinger lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph.**

40. When Bollinger Motors defaulted on the American Express credit card debt, Robert Bollinger's personal credit card transactions were rejected.

**ANSWER: Bollinger lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph.**

41. On January 8, 2025, Bollinger Motors claimed that it was "committed to settling its outstanding debt of $503,128.99 with American Express and intends to do so at its earliest possible opportunity." (Ex. F.)

**ANSWER: Bollinger submits that the terms of the document attached as Exhibit F to the Complaint, referenced in this Paragraph, speak for themselves, and accordingly no further response is required.**

42. Bollinger Motors knew these words were untrue when written, however, because internal correspondence confirmed it has been and continues to be insolvent.

**ANSWER: Bollinger denies the allegations of this Paragraph as untrue in the manner and form alleged.**

43. Bollinger Motors still carries a significant American Express credit card debt that will be the responsibility of Robert Bollinger if it is not paid off.

**ANSWER: Bollinger denies the allegations of this Paragraph as untrue in the manner and form alleged.**

44.     Since January 8, 2025, Bollinger Motors' financial prognosis has not improved.

**ANSWER: Bollinger denies the allegations of this Paragraph as untrue in the manner and form alleged.**

45.     Mullen, listed on the NASDAQ, has been advised that it is not eligible for any more reverse stock splits—its primary method of raising funds in order to fund the operations of Mullen and Bollinger Motors.

**ANSWER: The allegations of this Paragraph are directed to non-party Mullen, and accordingly, no response is required.  In addition, the allegations of this Paragraph contain no timeframe and fail to reference a document or matter of public record sufficient to identify the timing and source of the alleged date Mullen was "advised."   To the extent any further response is required, Bollinger lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph**

46.     Without significant outside investment, upon information and belief, Mullen cannot provide adequate resources to Bollinger Motors in order for it to be able to continue production.

**ANSWER: The allegations of this Paragraph are directed to non-party Mullen, and accordingly, no response is required. To the extent any further response is required, Bollinger lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph.**

47.    Bollinger Motors cannot independently raise funds to continue production without Mullen's approval, and such approval has routinely been rejected by Mullen.

**ANSWER: Bollinger denies the allegations of this Paragraph as untrue in the manner and form alleged.**

48.    Bollinger Motors' accounts are routinely overdrawn, and it is unable to service the tens of millions in dollars in unsecured debt it currently carries.

**ANSWER: Bollinger denies the allegations of this Paragraph as untrue in the manner and form alleged.**

49.    On March 11, 2025, Bollinger Motors was sued in Oakland County Circuit Court by its supplier Auto Metal Craft, Inc. for $728,329.80 in damages. (Ex. G.)

**ANSWER: Bollinger submits that the terms of the document attached as Exhibit G to the Complaint, referenced in this Paragraph, speak for themselves, and accordingly no further response is required. To the extent any further response is required, Bollinger admits that it has answered the Complaint and that the litigation of the case referenced in this Paragraph is continuing.**

50.    On March 20, 2025, Bollinger Motors was sued in Oakland County Circuit Court by two other vendors: Human Capital Ventures, Inc. and Productivity Team. The amounts these entities claim to be owed are nearly $700,000.

**ANSWER: Bollinger admits that Human Capital Ventures, Inc. and The Productivity Team LLC have filed actions against Bollinger. To the extent any further response is required, Bollinger admits that it has answered the Complaint filed by The Productivity Team, the answer for the Complaint filed**

**by Human Capital Ventures is not yet due, and that the litigation of the cases**

**referenced in this Paragraph is continuing.**

51.     Upon information and belief, numerous other suppliers are demanding payment on the amounts they are owed, and Bollinger Motors likely will be facing a deluge of collections lawsuits.

**ANSWER: Bollinger admits only that it is diligently working with its suppliers and vendors to resolve any current disputes.   Bollinger lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph.**

52.     Upon information and belief, Bollinger Motors' suppliers are unsecured creditors.

**ANSWER: This Paragraph is vague, as it fails to identify the specific suppliers in question.   To the extent any further response is required, Bollinger is unaware of any suppliers that have filed or attempted to claim a security interest in any of the collateral that is subject to the Note. Bollinger admits the allegations of this Paragraph to the best of knowledge, information and belief.**

53.     Upon information and belief, Bollinger Motors does not have any defenses to the potential claims of its vendors.

**ANSWER: Bollinger denies the allegations of this Paragraph as untrue in the manner and form alleged.**

54.     Bollinger Motor's principal production facility is shut down because the production facility is owed roughly $1.2 million, and the production team has been furloughed.

**ANSWER: Denies the allegations of this paragraph as untrue in the manner and form alleged.**

55.     Upon information and belief, Bollinger Motors has more than tens of millions of dollars in accounts payable with $0 in accounts receivable.

**ANSWER: Bollinger admits the allegations of this Paragraph.**

56.     Bollinger Motors has more than 40 trucks available for sale.

**ANSWER: Bollinger admits the allegations of this Paragraph.**

57.     Each of these electric trucks has a retail value of $135,000, for a total value in excess of $5 million.

**ANSWER: Bollinger admits the allegations of this Paragraph.**

58.     Each of these trucks are subject to Robert Bollinger's Security Interest.

**ANSWER: Bollinger denies the allegations of this Paragraph as untrue in the manner and form alleged.**

59.     These trucks are street-legal and could be driven away from Bollinger Motors' storage facility by any employee with access to the keys.

**ANSWER: Bollinger denies the allegations of this Paragraph as untrue in the manner and form alleged.**

60.     Further, any disgruntled employee, stockholder, or vendor could abscond with one or more of the electric trucks in order to offset any debt claimed to be owed.

**ANSWER: Bollinger denies the allegations of this Paragraph as untrue in the manner and form alleged.**

61.     In addition to the electric trucks, Bollinger Motors invested $15 million in the acquisition of its production machinery.

**ANSWER**: **Bollinger admits the allegations of this Paragraph.**

62.    The production machinery sits in a production facility owned and controlled by Bollinger Motors' production partner, Roush Corporation.

**ANSWER**: **Bollinger admits the allegations of this Paragraph.**

63.    Bollinger Motors paid-in-full for the production machinery, and other than Robert Bollinger's lien against the production machinery, the production machinery has not been pledged as security for any other debt.

**ANSWER**: **Bollinger denies the allegations of this Paragraph as untrue in the manner and form alleged.**

64.    Bollinger Motors invested significantly in the development of the intellectual property for the class 4 and class 5 trucks it has produced and could produce.

**ANSWER**: **Bollinger admits the allegations of this Paragraph.**

65.    Bollinger Motors' intellectual property includes significant proprietary trade secrets associated with the development, design, and manufacture of its class 4 and class 5 trucks, which is part of Robert Bollinger's collateral to secure the Note.

**ANSWER**: **Bollinger admits the allegations of this Paragraph.**

66.    Bollinger Motors' has taken steps to protect its trade secrets and intellectual property to ensure that it is not generally known outside the company.

**ANSWER**: **Bollinger admits the allegations of this Paragraph.**

67.    Within Bollinger Motors, its trade secrets and intellectual property are kept in password protected files that should not be generally accessible by employees that do not have a need to know the trade secrets and/or intellectual property.

**ANSWER**:  **Bollinger admits the allegations of this Paragraph.**

68.    Any third party that wants access to review the Bollinger Motors intellectual property and trade secrets, such as a vendor or a prospective investor,

must sign a non-disclosure agreement to limit their access to the information and ability to disclose the information.

**ANSWER: Bollinger admits the allegations of this Paragraph.**

69.    Nevertheless, for those parties who might have access to the trade secrets and/or intellectual property, this information could be copied and transferred via the internet or a portable hard drive.

**ANSWER: Bollinger denies the allegations of this Paragraph as untrue in the manner and form alleged.**

70.    There is a risk that a disgruntled employee, director, officer, stockholder, or vendor could transfer the valuable Bollinger Motors intellectual property and trade secrets to themselves in an attempt to profit from the hard work of the Company.

**ANSWER: Bollinger denies the allegations of this Paragraph as untrue in the manner and form alleged.**

71.    If the intellectual property and trade secrets became generally known or released beyond Bollinger Motors, the value of the intellectual property and trade secrets would be significantly damaged.

**ANSWER: Bollinger lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph.**

72.    The appointment of a receiver over Bollinger Motors' assets is necessary to protect such assets from dissipation, damage, destruction, concealment, disposal, or loss.

**ANSWER: Bollinger denies the allegations of this Paragraph as untrue in the manner and form alleged.**

73.    Robert Bollinger has a valid security interest in the assets of Bollinger Motors.

**ANSWER**: Bollinger admits only that Robert Bollinger has a security interest in the assets of Bollinger that were pledged as collateral for the Note and denies that Bollinger's current inventory of trucks is collateral under the Note or secured by any UCC-1 filed by Mr. Bollinger. Bollinger lacks information or knowledge sufficient to form a belief as to the remaining allegations of this Paragraph.

74.    Robert Bollinger is owed in excess of $10,500,000, secured by substantially all of Bollinger Motors' assets.

**ANSWER**: Bollinger denies the allegations of this Paragraph as untrue in the manner and form alleged.

75.    Alternative legal remedies, such as an award of damages, do not exist since Bollinger Motors has no available resources to allow it to pay its debts.

**ANSWER**: Bollinger denies the allegations of this Paragraph as untrue in the manner and form alleged.

76.    The appointment of a receiver will do more good than harm because it will allow for the orderly disposition of Bollinger Motors' assets.

**ANSWER**: Bollinger denies the allegations of this Paragraph as untrue in the manner and form alleged.

## Count I — Breach of Contract

77.    Robert Bollinger restates the foregoing allegations as though fully stated herein.

**ANSWER**: Bollinger restates and incorporates by reference its prior answers to the above Paragraphs in Plaintiff's Complaint as if set forth herein.

78.    The Note is a valid and enforceable contract.

**ANSWER: Bollinger admits the allegations of this Paragraph.**

79.    Bollinger Motors defaulted on its obligations under the Note when it failed to make payment when due on February 28, 2025, and then failed to provide payment within the three business days following February 28, 2025 (the "Default").

**ANSWER: Bollinger denies the allegations of this Paragraph as untrue in the manner and form alleged.**

80.    Because of the Default, the full amount of the Note is due and owing to Robert Bollinger.

**ANSWER: Bollinger denies the allegations of this Paragraph as untrue in the manner and form alleged.**

81.    Robert Bollinger has suffered damages as a result of Bollinger Motors' breach.

**ANSWER: Bollinger denies the allegations of this Paragraph as untrue in the manner and form alleged.**

82.    Robert Bollinger seeks judgment as set forth below.

**ANSWER: Bollinger admits that Robert Bollinger is alleging he is entitled to a judgment in this case and denies any liability to Robert Bollinger under the Note.   Bollinger lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph.**

### Count II — Appointment of Receiver

83.    Robert Bollinger restates the foregoing allegations as though fully set forth herein.

**ANSWER: Bollinger restates and incorporates by reference its prior answers to the above Paragraphs in Plaintiff's Complaint as if set forth herein.**

84.     Good cause exists for the appointment of a receiver.

**ANSWER: Bollinger denies the allegations of this Paragraph as untrue in the manner and form alleged.**

85.     Bollinger Motors is without the resources to preserve the collateral pledged as security under the Note.

**ANSWER: Bollinger denies the allegations of this Paragraph as untrue in the manner and form alleged.**

86.     Bollinger Motors' collateral is jeopardized and in danger of further deterioration.

**ANSWER: Bollinger denies the allegations of this Paragraph as untrue in the manner and form alleged.**

87.     Robert Bollinger is entitled to have the receiver appointed as a matter of equity to protect it from injury and to ensure that its collateral is sold or otherwise liquidated, and all proceeds are remitted to Robert Bollinger until all obligations owed to him are paid in full.

**ANSWER: Bollinger denies the allegations of this Paragraph as untrue in the manner and form alleged.**

88.     Appointment of a receiver will ensure that the assets of Bollinger Motors, which may exceed the value of the Note, are collected and organized in a fashion that will preserve value for Bollinger Motors' unsecured creditors.

**ANSWER: Bollinger denies the allegations of this Paragraph as untrue in the manner and form alleged.**

89.   Without the appointment of a receiver, Robert Bollinger is at risk of immediate and irreparable injury, loss, and damage to its collateral unless a receiver is appointed.

**ANSWER: Bollinger denies the allegations of this Paragraph as untrue in the manner and form alleged**.

90.   The financial condition of Bollinger Motors and its inability to preserve the collateral jeopardizes Robert Bollinger's secured priority position.

**ANSWER: Bollinger denies the allegations of this Paragraph as untrue in the manner and form alleged.**

91.   The appointment of a receiver is necessary to preserve, protect, and maintain the value of Robert Bollinger's interests in the collateral and to maximize the value of Bollinger Motors' business operations.

**ANSWER: Bollinger denies the allegations of this Paragraph as untrue in the manner and form alleged.**

92.   Robert Bollinger requests that the Court enter an order (a) appointing a receiver over Bollinger Motors during the pendency of this action; and (b) requiring all persons who have possession or control of collateral or other real or personal property arising out of, or pertaining to Bollinger Motors' business operations, to yield and deliver possession of the same to the receiver appointed by the Court.

**ANSWER: Bollinger denies that the relief requested in this Paragraph of Count II of the Complaint is warranted under the circumstances.**

## RELIEF REQUESTED

**WHEREFORE,** Defendant Bollinger Motors, Inc. prays that this Honorable Court dismiss Count II of this action against Bollinger and award Bollinger such other relief as the Court deems warranted under the circumstances.

## <u>AFFIRMATIVE DEFENSES</u>

Defendant Bollinger Motors, Inc., through its attorneys, Howard & Howard Attorneys PLLC, states the following for its affirmative defenses:

1.      All or some of Plaintiff's claims fail to state a claim for which relief can be granted.

2.      All or some of Plaintiff's claims are barred based on the failure of a condition precedent.

3.      All or some of Plaintiff's claims are barred by the express terms of the Contract at issue.

4.      All or some of Plaintiff's claims are premature and/or not ripe for adjudication.

5.      All or some of Plaintiff's claims are barred by the fact that the alleged default was either a non-material breach or was cured and/or waived by the parties' subsequent actions, including acceptance of the alleged late payment. Bollinger reserves the right to add additional affirmative defenses as additional facts become known through the course of discovery in this case, or as otherwise permitted by the Court.

24

HOWARD & HOWARD ATTORNEYS PLLC

By: /s/ *Miles T. Macik*
      Miles T. Macik (P63262)
      Attorneys for Defendant
      450 West Fourth Street
      Royal Oak, MI 48067-2557
      (248) 645-1483
      mtm@h2law.com

Dated:  April 24, 2025

## CERTIFICATE OF SERVICE

**THE UNDERSIGNED** certifies that on the 24th day of April 2025, the foregoing paper was electronically filed with the Clerk of the Court using the ECF system and to the following:

H. William Burdett, Jr., Esq.
Winthrop & Weinstine, P.A.
P.O. Box 15038
Lansing, MI 48901
bburdett@winthrop.com

By:  /s/ *Miles T. Macik*
      Miles T. Macik (P63262)
      Attorneys for Defendants

4911-3989-0221, v. 5